UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

UNITED STATES OF AMERICA                          CASE NO.: 3:20-cr-00154 -MPS

VS.

MICHAEL SMITH                                     FEBRUARY 8, 2021


### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM INTERCEPTION OF WIRE COMMINICATIONS AND SEIZURE OF ELECTRONIC COMMUNICATIONS AND MEMORANDUM IN SUPPORT THEROF

DEFENDANT Michael Smith ("Smith"), by and through undersigned counsel, and pursuant to 18 U.S.C. § 2518(10), Rule 12(b)(3)(c) of the Federal Rules of Criminal Procedure, and the Fourth Amendment to the United States Constitution, hereby respectfully moves the Honorable Court to suppress the contents of all intercepted wire communications and seized electronic communications, and all evidence derived from them.

In support of this motion, Smith states as follows:

I.   **STATEMENT OF FACTS**

On November 18, 2019, , the Government, through Task Force Officer ("TFO") Scott Vitelli ("Vitelli") submitted an affidavit ("November 18th Wiretap Affidavit"); attached as Exhibit 1) in support of an Order from the Honorable Janet C. Hall for authorization to intercept communications occurring to and from the cellular telephone number (203) 410-1029 (hereafter

1

"TT1") with no subscriber information, used by Smith. One day prior, on November 17th 2019, Judge Hall signed the Order for wiretap interception for a period of thirty days.

On December 18th, 2019, the Government submitted another Application and Affidavit in Support of an Order requesting an extension of the Smith Wiretap ("December 18th Wiretap Affidavit"). In the same, authorization was requested for an initial interception of electronic communications occurring over 305-733-1649 (hereafter "TT2"), attached as Exhibit 2. TT2 was alleged to be used by Jean-Carlos Hernandez-Jiminez.

However, on December 20th, 2019, the Government submitted a third Application and Affidavit requesting the authorization of initial interception of communications occurring over 305-733-1649 ("December 20th" Wiretap Affidavit"), attached as Exhibit 3. That affidavit is titled Affidavit in Support of an Application for an *Amended* Order Authorizing the Interception of Wire and Electronic Communications, reporting that the IMSI number and subscriber address provided by TFO Vitelli in the application, affidavit, and Court's order of December 18th were incorrect as to TT2. TFO Vitelli never requested an Amended Order Authoring the Interception of Wire and Electronic Communications for TT1.

Smith moves to suppress all evidence obtained by the government as a result of the November 18th Wiretap Affidavit, Application and November 17th Order, as such Order was facially insufficient; and the December 18th Wiretap Affidavit, Application and Order on the grounds that that Order was facially insufficient.

2

II.  **ARGUMENT**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., authorizes the district court to approve an application for the interception of certain wire, oral, or electronic communications. See 18 U.S.C. § 2518. The wiretap statute requires that an application for a wiretap shall be in writing, under oath, and shall contain certain information including "a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted." Id. § 2518(1). On the basis of the facts submitted by the applicant, the district court may authorize a wiretap upon finding that (1) probable cause exists to believe that an individual has committed or is about to commit one of certain enumerated offenses; (2) probable cause exists to believe that "particular communications concerning that offense will be obtained" through an interception; (3) "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried"; and (4) probable cause exists to believe that the communication facility sought to be wiretapped "[is] being used, or [is] about to be used, in connection with the commission of [the] offense." Id. § 2518(3)(a-d); see United States v. Donovan, 429 U.S. 413, 435 (1977).

Section 2518(10)(a) of Title 18, United States Code, permits any aggrieved persons to move to suppress evidence derived from electronic surveillance. The definition of an aggrieved person in Section 2510(11) is: A person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed, and is also the definition of standing for purposes of Title III. United States v. Bellosi, 501 F.2d 833, 841-42 (1974). Section 2518(10) (a) provides that the aggrieved person may move to suppress the

3

contents of any intercepted wire or oral communication, or evidence derived there from, on the grounds that "the communication was unlawfully intercepted"; "the order of authorization or approval under which it was intercepted is insufficient on its face"; or "the interception was not made in conformity with the order of authorization or approval". 18 USC § 2518(10).

In the present case, the government intercepted wire communications to and from Smith's numbers. Consequently, he is an aggrieved party with standing to move to suppress the seized communications and the evidence derived from the seizure. Further, many courts have extended standing to include anyone implicated by information obtained from tapes or electronic surveillance as having an apparent additional right to suppress the implicating information. See United States v. Gambals, 610 F. Supp. 1515, 1521 ( D. Mass, 1985). See generally, James Carr, The Law of Electronic Surveillance, 2nd Edition, (Clark Boardman Company, N.Y. 1996), Vol. 2, Section 6.2 (b) (4). On these grounds, Smith also has standing to challenge the seizure electronic communications from another's cellular telephone that relate to Smith, see Alderman v. United States, 394 U.S. 165 (1969); United States v. Williams, 580 F. 2d 578 (D.C. Cir. 1978), cert denied, 439 U.S. 832 (1979) and all evidence derived from the seizures.

**A. The November 17th order issued to intercept wire communications was done so without oath or affirmation and is therefore invalid, insufficient on its face, and necessitates suppression.**

18 U.S.C. § 2518(1) specifies that each application for an order authorizing or approving the interception of wire, oral or electronic communication shall be made in writing upon oath or

4

affirmation to a judge of competent jurisdiction. And pursuant to 18 U.S.C § 2815(3), upon such application, the judge may issue an Order for such interception.

The Government, through Task Force Officer ("TFO") Scott Vitelli ("Vitelli") submitted the November 18th Wiretap Application and Affidavit in support of an order to the Honorable Janet C. Hall for authorization to intercept communications occurring to and from the cellular telephone number (203) 410-1029, TT1, used by Smith. The Application is dated and signed by the Government on November 18th, 2019. The Affidavit is undated but signed by TFO Vitelli on the same date of November 18th, 2019  Both are sworn to under Oath before the Honorable Janet Hall On November 18th, 2019. However, the Order authorizing the interception is signed by Judge Hall on November 17th, 2019 at 10:48 AM. This is irregular, and calls into question the validity of the order authorizing interception of TT1.

The Fourth Amendment commands that "no Warrant shall issue but upon probable cause, supported by Oath or affirmation.". But when is that oath or affirmation to be given? If an order for interception of electronic communications can issue prior to Oath or affirmation, that makes the Oath or affirmation provision superfluous. Although it has sometimes been contended that noncompliance with the oath or affirmation requirement is mere technical irregularity that does not require suppression of the evidence obtained pursuant to the mistakenly issued search warrant, this is not the case. Lafave, Search and Seizure: A Treatise on the Fourth Amendment, Vol 2 p. 520 (4th Edition 2004). As elaborated in State v Tye, 248 Wis.2d 530, 636 N.W.2d 473 (2001), an oath is a matter of substance not form, and it is an essential component of the Fourth Amendment and legal proceedings. The oath preserves the integrity of the search warrant

5

process, and thus protects the constitutionally guaranteed fundamental right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.

U.S. v. Turner, 558 F.2d 46 (2nd Cir. 1977) stated that "an "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed. See Frazier v. Roberts, 441 F.2d 1224, 1228 (8th Cir. 1971); cf. Fed.R.Evid. 603; McCormick on Evidence § 245, at 582 (2d ed. 1972)."

Curing the absence of an oath or affirmation before a circuit court issues a warrant by permitting the swearing of an oath or affirmation after the warrant was executed eviscerates the oath or affirmation requirement. An after-the-fact oath or affirmation disregards the historical importance of the oath or affirmation as the basis upon which a neutral magistrate issues a warrant. State v. Tye, 2001 WI 124, 636 N.W.2d 473, 248 Wis.2d 530 (Wis. 2001).  "The error in Tye was a wholesale failure in the constitutionally required process of obtaining a search warrant." Id.  Similarly, in the present case the Order signed before the Oath or affirmation violates both the constitutionally mandated process and renders the Order facially invalid.

In U.S. v. Vargas-Amaya, 389 F.3d 901 (9th Cir. 2004), the Supreme Court has made clear that no statute can purport to authorize the issuance of any warrant based upon less than that required by the Fourth Amendment. Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933) ("The amendment applies to warrants under any statute; revenue, tariff,

6

and all others. No warrant inhibited by it can be made effective by an act of Congress or otherwise."). Although Nathanson specifically dealt with search warrants, it interpreted the Warrant Clause to apply to all warrants. See id.; see also Giordenello, 357 U.S. at 485-86, 78 S.Ct. 1245 (explaining that the Warrant Clause "applies to arrest as well as search warrants"). Failure to administer the Oath or affidavit prior to granting the Order makes such Order facially invalid, and as such, necessitates suppression pursuant to 18 USC § 2515 and § 2518 (10)(a)(1).

Title III includes its own exclusionary mandate. Section 2515 provides: Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of [Title III]. 18 U.S.C. § 2515. United States v. Scurry, 821 F.3d 1 (D.C. Cir. 2016).

To determine whether a wiretap order is facially insufficient, a reviewing court must examine the four corners of the order and establish whether, on its face, it contains all that Title III requires it to contain. See United States v. Chavez, 416 U.S. 562, 573–74, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) ; United States v. Giordano, 416 U.S. 505, 525 n.14, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). If the order complies with the requirements of Title III, it is "[ ]sufficient on its face"; if it does not comply with those requirements, it is "insufficient on its face." See 18 U.S.C. § 2518(10)(a)(ii)...United States v. Scurry, 821 F.3d 1 (D.C. Cir. 2016).

The Supreme Court of the United States discussed defects in the Order that would render it facially insufficient in Dahda v. United States, 138 S. Ct. 1491, 200 L.Ed.2d 842 (2018), while

recognizing that "the lower courts in various contexts have debated just which kinds of defects subparagraph (ii) covers. See, e.g., United States v. Moore, 41 F. 3d 370, 375-376 (CA8 1994) (order missing judge's signature); United States v. Joseph, 519 F. 2d 1068, 1070 (CA5 1975) (order identifying the wrong Government official as authorizing the application); United States v. Vigi, 515 F. 2d 290, 293 (CA6 1975) (same). The Supreme Court did not resolve the questions that these many different cases raised in regard to defects in Orders, except for Dahda's who sought a petition for certiorari seeking review of the Tenth Circuit's facial insufficiency determination. It's decision in Dahda endeavored to clarify different related holdings among the Circuits. Dahda v. U.S. Roosevelt Rico Dahda (2018).

"The statute means what it says. That is to say, subparagraph (ii) applies where an order is 'insufficient on its face.' §2518(10)(a)(ii)." Dahda v. U.S. Roosevelt Rico Dahda (2018)

It is clear that subparagraph (ii) covers at least an Order's failure to include information that §2518(4) specifically requires the order to contain. See §§2518(4)(a)-(e) (requiring an order to specify, e.g., the "identity of the person, if known, whose communications are to be intercepted," "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates"); An Order lacking that information would deviate from the uniform authorizing requirements that Congress explicitly set forth, while also falling literally within the phrase "insufficient on its face."...Dahda v. U.S. Roosevelt Rico Dahda (2018).

In one such facially insufficient case, Moore, as mentioned above, a Circuit Court determined that an unsigned Order was 'insufficient on its face' and then employed a two-tiered analysis, to determine whether that defect requires suppression of the resulting wiretap evidence.

8

The District Court granted the motion to suppress concluding that "[t]here is no better example of a wiretap order which is 'insufficient on its face' within the meaning of 18 U.S.C. Sec. 2518(10)(a)(ii) than an order which has not been signed by a judge."  The government appealed this interlocutory order, and the Eighth Circuit erroneously evaluated the case based on core requirements, technical defects, and the good faith doctrine adopted in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  They decided that "the insufficiency was a technical defect not requiring suppression under Sec. 2518(10)(a)" U.S. v. Moore, 41 F.3d 370 (8th Cir. 1995).

In another facially insufficient case, the Second Circuit reasoned that an omission of a minimization directive was a "technical defect" under the circumstances of this case where its absence could not, assuming proper attention to the provisions of the warrant, lead to a greater invasion of privacy than was justified by probable cause. Cf. Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959) (deficiencies are "technical" where no substantial rights are involved).  United States v. Cirillo, 499 F.2d 872 (2nd Cir. 1974).

But technical defects are explained in a constitutional context in Glover: "Nor do we think that the jurisdictional flaw in the warrant can be excused as a "technical defect." It is true that several of our sister circuits have declined to hold paragraph (ii) violated because of technical errors. See, e.g., United States v. Moore, 41 F.3d 370, 375 (8th Cir.1994) (inadvertent failure of magistrate to sign order is a "mere technical defect" not warranting suppression); United States v. Traitz, 871 F.2d 368, 379 (3d Cir.1989) (inadvertent omission of one page of an order does not render the order insufficient on its face where the order still meets all statutory requirements).  Even if we assume that an imperfect authorizing order could be thought facially

9

sufficient, we do not see how a blatant disregard of a district judge's jurisdictional limitation can be regarded as only "technical"." The Court further added that "The government's last refuge is a plea that we recognize the government's "good faith" and, therefore, import a good faith exception to Title III's remedy of suppression. The Supreme Court has done so regarding Fourth Amendment violations, see United States v. Leon, 468 U.S. 897, 911, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where there is no explicit textual remedy. Here, of course, Congress has spoken: The statute requires suppression of evidence gathered pursuant to a facially insufficient warrant." United States v. Glover, 736 F.3d 509 (D.C. Cir. 2013).

The November 17th Order does not meet the threshold definition of a constitutionally valid Order because it was executed prior to the Oath or affirmation. 18 U.S.C. § 2518(4) presumes that "each Order" is a constitutionally valid one; if not, it must necessarily fail as facially insufficient. It is Smith's position that an Oath preformed after the signing of an Order can never be a technical violation.

Any evidence gathered pursuant to prior unlawful government conduct cannot serve as probable cause to support extensions of previously unlawful interceptions. See United States v. Giordano, 416 U.S. 505 (1974). Consequently, any subsequent authorization and all subsequent extensions are invalid since they incorporated and were based on the first affidavit.

**B. The Government's Failure To Describe With Particularity The Nature And Location Of The Facilities From Which The Communication Is To Be Intercepted Requires Suppression**

Smith submits that the Government's mistake in the December 18th Wiretap Application, Affidavit and Order, erroneously identifying TT2 with an incorrect ISMI number and subscriber address renders the statutory requirements for issuance of the wiretap order unfulfilled.

The Government readily admits that the IMSI number and subscriber address it provided in the December 18th application, affidavit, and for the Court's order of December 18th were incorrect as to TT2. The Government states in the December 20th Application that "on December 18, 2019, the government submitted to the Court an application, affidavit and proposed order for authorization to intercept wire and electronic communications occurring over the captioned telephones, and the order was signed by the Court as two (sic) both target facilities on the same day. However it has been determined that the IMSI number and subscriber address of Target Telephone 2 on each the December 18 documents is incorrect." (December 20th Application page 1).

TFO Vitelli states in his December 20th Affidavit that "on December 18, 2019, United States District Judge Janet Hall authorized the interception of electronic and wire communications occurring over TT1 and the initial the interception of electronic and wire communications occurring over TT2 for a period of 30 days. Interception of communications occurring over TT1 commenced on December 18, 2019 and continues to date. Interception of communications occurring over TT2 has not been initiated, and the ISMI number and subscriber address in the application affidavit and the Court's order are incorrect." (December 20th Affidavit p. 7).

11

Notably, the IMSI numbers and subscriber address provided in the December 18th Application, Affidavit, and Order and the December 20th Amended Application, Affidavit, and Order are substantially different and cannot be attributed to scriveners error. Further, the December 20th Amended Application and Order differs from the Amended Affidavit in support of that Application and Order of the same date regarding the interception sought in the Caption on Page 1 of each respectively. The heading of the Amended Affidavit requests interception of TT1 and TT2, but the heading of the Application and Order refers only to TT2 only.

For all these reasons, it is Smith's position that the December 18th wiretap order is inarguably facially insufficient under 18 U.S.C. § 2518(10)(a)(ii) as to both TT1 and TT2.

Pursuant to 18 U.S.C. § 2518(4)(b), an order must contain "the nature and location of the communications facilities as to which authority to intercept is granted." Cell phones are communication facilities and intercepts occur at the location of the cell phone. *See, e.g., United States v. Dahda*, 853 F.3d 1101, 1112 (10th Cir. 2017) ("Thus, an 'interception' under Title III occurs both where the tapped telephones are located and where law enforcement officers put their listening post."), *aff'd on other grounds*, 138 S. Ct. 1491; *United States v. Scurry*, 821 F.3d 1, 14 (D.C. Cir. 2016) (concluding that "Congress intended the word 'facilities' in sub-sections 2518(1)(b)(ii) and (4)(b) to encompass cell phones themselves"); *United States v. Hermanek*, 289 F.3d 1076, 1086 n.3 (9th Cir. 2002) ("A cellular phone number is a 'communications facility.'"); *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997). ("Although the 'nature and location' of a cellular phone cannot be described in the same way as that of a land line phone, a cellular phone is itself a 'facilit[y]' that can be sufficiently identified by such features as its telephone number, electronic serial number (ESN) or international mobile subscriber identity number

(IMSI)." (alteration in original) (citation omitted)); United States v. Goodwin, 141 F.3d 394, 403 (2d Cir. 1997).

*United States v. Scurry*, 821 F.3d 13 (D.C. Cir. 2016) questioned whether suppression pursuant to 18 USC Sec. 2515 was the appropriate remedy where facial insufficiency was alleged. "The issue does not turn on the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights, but upon the provisions of Title III." US v Giordano, 416 U.S. at 524, 94 S.Ct. 1820. Title III sets out three grounds for suppression, 18 U.S.C. § 2518(10)(a)(i)–(iii), and the Supreme Court explained the analytical distinctions between them in U.S. v Chavez, 416 U.S. at 573–75, 94 S.Ct. 1849, and *Giordano,* 416 U.S. at 524–27, 94 S.Ct. 1820. A functional inquiry determines whether a violation of Title III is such that the contents of the wiretap must be suppressed as "unlawfully intercepted." 18 U.S.C. § 2518(10)(a)(i). Suppression is required only when the government fails to comply with "those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Giordano,* 416 U.S. at 527, 94 S.Ct. 1820. Consequently, not every failure to comply with Title III will warrant suppression under § 2518(10)(a)(i). For example, under the "unlawfully intercepted" paragraph, the failure to comply with § 2516(1)'s application pre-approval requirement results in suppression, *Giordano,* 416 U.S. at 524–29, 94 S.Ct. 1820, but suppression does not necessarily result from the misidentification of the authorizing Justice Department official in the wiretap application and order, *Chavez,* 416 U.S. at 574–80, 94 S.Ct. 1849.

The Supreme Court, however, pursued an altogether different methodological tack in analyzing the scope of the facial-insufficiency ground of § 2518(10)(a)(ii). As the court recently explained, in *Giordano* and *Chavez,* the Court read paragraph (i) as requiring a broad inquiry into the government's intercept procedures to determine whether the government's actions transgressed the "core concerns" of the [wiretap] statute, whereas (ii) is a mechanical test; either the warrant is facially sufficient or it is not.... Suppression is the mandatory remedy when evidence is obtained pursuant to a facially insufficient warrant. There is no room for judicial discretion. *Glover,* 736 F.3d at 513. In sum, once a reviewing court determines that a wiretap order is facially insufficient, the only appropriate remedy is suppression. The *Glover* court's reasoning is, in any event, faithful to both Supreme Court precedent and the text of Title III. Id.

Because the December 18th wiretap Order is facially insufficient, in that it fails to identify the nature and location of the communication facilities as to which authority to intercept is granted, the contents of intercepts collected pursuant to that Order and evidence derived therefrom must be suppressed pursuant to 18 U.S.C. §§ 2515 and 2518(10)(a)(ii).

## III. CONCLUSION

Smith submits that the November 17th Order issued to intercept wire communications was done so without Oath or affirmation and is therefore invalid and insufficient on its face, and as a result requires the mandatory suppression remedy proscribed by 18 U.S.C. §§ 2515 and 2518(10)(a)(ii). Any evidence gathered pursuant to a prior unlawful government conduct cannot serve as probable cause to support extensions of previously unlawful interceptions. Further, the government's failure to describe with particularity the nature and location of the communication facilities from which the communication was to be intercepted in the December 18th Application,

Affidavit and Order, renders the December 18th Order facially insufficient. Based on the foregoing, Defendant Smith respectfully requests this Honorable Court to enter an Order suppressing from use at trial all evidence that was obtained directly or indirectly as a result of the unlawful interceptions.

Respectfully Submitted,

                            THE DEFENDANT

                            */s/ Jamie E. Alosi*

                            JAMIE E. ALOSI, ESQ.
                            50 ELM STREET
                            NEW HAVEN, CT 06510
                            TEL NO. (203) 777-9292
                            Fed Bar ct 10010
                            jalosi@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 8th, 2021, the foregoing motion was served on the following parties of record:

H. Gordon Hall
Assistant United States Attorney
157 Church Street
New Haven, CT 06510

                            */s/ Jamie E. Alosi*
                            _____
                            JAMIE E. ALOSI